IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02655-CMA-KLM

MICHAEL GERARD KOPEC,

      Applicant,

v.

RON LEYBA, Warden of ACC, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on the **Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 10; Filed January 9, 2009] filed by Michael Gerard Kopec ("Applicant").  Respondents filed an Answer Brief objecting to the Application on April 27, 2009 [Docket No. 20], and Applicant filed a Traverse on May 26, 2009 [Docket 25].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Application has been referred to this Court for recommendation.  The matter has been fully briefed and is ripe for resolution.  The Court has considered the relevant Application pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises.  For reasons set forth below, the Court **RECOMMENDS** that the Application be **DENIED**.

## I.  Background

Applicant challenges his state court conviction for second degree assault on a police officer pursuant to Colo. Rev. Stat. § 18-3-203, and his adjudication as an habitual

criminal.[1]  In April 2002, Applicant was convicted by a jury in the Jefferson County District Court, Colorado and sentenced to twenty-four years in prison.  *Application* [#10] at 2. Applicant is currently in custody at the Arrowhead Correctional Center ("ACC") in Canon City, Colorado.

The facts giving rise to Applicant's conviction are the following.  On the morning of July 17, 2001, Applicant removed all of his clothing and walked down a Denver city street. *Record* vol. VI at 119-23.  Police were contacted and a Lakewood Police Officer responded to the scene.  *Id.* vol. VII at 5-7.  The officer placed his right arm out to stop Applicant from walking any further.  Undeterred, Applicant hit the officer in the face.  *Id.* at 8-9, 23-24.  The officer fell to the ground and momentarily lost consciousness.  When he awoke, Applicant was running down the street and then dove into the passenger seat of a dump truck parked nearby.  *Id.* at 10, 24.  The officer reached Applicant and leaned into the dump truck from the passenger side to attempt to remove Applicant.  *Id.*  Applicant began kicking the officer in the face.  *Id.* at 11, 25-26.  By this time, a second officer arrived on the scene and removed Applicant from the driver's side of the dump truck.  *Id.* at 13-14, 27.  Both officers struggled to subdue Applicant, who continued to fight with them.  *Id.* at 14-15.  With the assistance of additional officers who arrived at the scene, Applicant was placed under arrest.  *Id.* at 15.  Due to his injuries, the first officer lost consciousness twice and was eventually treated for trauma to his jaw, teeth and head.  *Id.* at 16-17, 29.  He was not able to return to full duty for two months.  *Id.* at 17.

Applicant appealed his conviction on several grounds not relevant here.  The

_____

[1] Applicant was also convicted of resisting arrest and indecent exposure, neither of which is at issue here.

Colorado Court of Appeals ("CCA") denied the appeal. *People v. Kopec,* No. 02CA2565 (Colo. Ct. App. Jan. 20, 2005) (unpublished decision).   The Colorado Supreme Court declined to exercise jurisdiction and denied Applicant's petition for writ of certiorari. *Kopec v. People*, No. 05SC161 (Colo. May 16, 2005) (unpublished decision).

Applicant also pursued postconviction relief.  On March 16, 2006, Applicant filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c), arguing that his trial counsel was ineffective. The trial court denied postconviction relief on July 17, 2006 [Docket No. 14-19].  On appeal, the CCA also denied his request. *People v. Kopec*, No. 06CA1541 (Colo. Ct. App. May 17, 2007) (unpublished decision).  Applicant appealed the CCA's decision, and the Colorado Supreme Court declined to grant a writ of certiorari. *Kopec v. People*, 07SC604 (Colo. Oct. 9, 2007) (unpublished decision).

On December 8, 2008, Applicant filed the current action.  The Second Amended Application raises two claims for relief, only one of which remains pending for my review. *See Order* [#15] at 7-8.

Claim I      Trial counsel's failure to raise and support an intoxication defense constitutes ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. *Application* [#10] at 6, 22-23.

Respondents concede that there are no issues involving timeliness of the Application or exhaustion of Applicant's remaining claim.  Therefore, I resolve the claim on its merits.

## II. Analysis

### A.    Applicant's Status

Applicant is proceeding *pro se*.  Therefore, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).   In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural or pleading defects caused by Applicant's *pro se* status.   *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).   However, the Court is not the Applicant's advocate and must nevertheless deny an application that is based on vague, conclusory, or unsupported allegations.   *Hall*, 935 F.3d at 1110.

### B.   Standards of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The first and second standards of review involve claims of legal error.   Both standards require that there be clearly established law to generate an analysis on the merits.   *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).   A state court decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406.   A state court decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.   *Id.* at 409.   However, the Court "may not issue the

4

writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly.   Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'"  *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

The third standard of review involves claims of factual error.   While this standard requires a substantial showing by Applicant, "deference does not by definition preclude relief."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).   However, pursuant to this Court's habeas review of state court decisions involving factual conclusions, a presumption of correctness exists regarding state trial and appellate court findings of fact.   *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982).   As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

### C.   Merits of Remaining Claim

Applicant's remaining claim can be divided into three subparts:  (1) The CCA erred in finding that Applicant's trial counsel did not fail to investigate or pursue a valid intoxication defense; (2) The CCA erred in failing to require or conduct an evidentiary hearing; and (3) This Court should conduct an evidentiary hearing.

### 1.   Failure to Investigate or Pursue Intoxication Defense

Applicant contends that trial counsel's failure to investigate and pursue at trial a defense centered on his alleged incapacity at the time of the offense amounted to ineffective assistance pursuant to the Sixth Amendment and deprived Applicant of a fair trial pursuant to the Fourteenth Amendment.   Specifically, Applicant argues that "[t]he end

5

result of the applicants [sic] trial attorneys [sic] error in not presenting or asserting a

defense . . . of intoxication thru [sic] expert psychiatric or toxicology evidence and

testimony, specifically that of applicants [sic] hospital medical evidence prejudiced this

applicant severly [sic]." *Application* [#10] at 23.  As a consequence, Applicant contends

that his constitutional rights were violated and he "suffered an unfair trial where counsel

failed to hold the government to the burden of proof" resulting in Applicant's conviction as

a habitual criminal and heightened sentence.  *Id.*

The CCA found that (1) Applicant's contention that his trial counsel failed to

investigate an intoxication defense was "plainly refuted by the record" and that Applicant's

trial counsel had, in fact, adequately investigated pursuing an intoxication theory; (2)

Applicant had "alleged no facts which, if true, would support a finding of error or prejudice"

as a result of counsel's abandonment of the intoxication theory at trial and determining that

the decision not to pursue an intoxication defense was a reasonable strategy under the

circumstances; and (3) given the record before it, it was unnecessary to conduct a hearing

on the extent of trial counsel's investigation or his trial strategy.  *Kopec*, No. 06CA1541, slip

op. at 5-7.  Specifically, the CCA noted that

> [c]ounsel filed a notice of potential defenses, which included intoxication.
> Counsel also filed a motion stating that he had contacted an expert in the
> field of toxicology and that the expert had "agreed to review all necessary
> materials to form an expert opinion, to provide an expert opinion and to testify
> as a defense witness in the jury trial in this case."  Before trial, however,
> counsel informed the court that he had decided not to pursue an intoxication
> defense "unless something drastically change[d] during the trial."

*Id.* at 6.

The Court's analysis on this issue is limited to whether the CCA's decision was

contrary to or an unreasonable application of Supreme Court precedent or the CCA

6

unreasonably applied the facts and evidence available to it.   28 U.S.C. § 2254(d).

Respondents argue that the CCA correctly held that Applicant's trial counsel investigated

an intoxication defense and such a finding is entitled to a presumption of correctness.

*Answer Brief* [#20] at 11-12.   Further, Respondents contend that the CCA correctly held

that trial counsel's decision not to pursue an intoxication defense was a reasonable

strategic decision that did not rise to the level of prejudice or an unprofessional tactical

error.   *Id.* at 13-15.

### a.      Investigation of Intoxication Defense

The CCA's determination that counsel adequately investigated an intoxication

defense based on the record before it is a factual determination which is entitled to a

presumption of correctness.   *See Sumner*, 455 U.S. at 592-93.   Here, Applicant provides

no basis for his conclusion that his trial counsel actually failed to adequately investigate an

intoxication defense.   Rather, he merely suggests that "just because [trial counsel] raised

the notice of defenses, that does not prove he did any investigation into them . . . ."

*Traverse* [#25] at 4.   Such a conclusory allegation, which is based on no more than

speculation, is insufficient to support a claim for ineffective assistance of counsel.   *United

States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (noting that court is "not required to

fashion [Applicant's] argument for him where his allegations are merely conclusory in

nature and without supporting factual averments").

A review of the CCA's findings and the state court record does not reveal that trial

counsel failed to conduct an investigation.   Rather, it reveals that despite what the

investigation uncovered, trial counsel made a tactical decision not to pursue an intoxication

defense because:   (1) it is not a complete defense, *Record* vol. V at 8 (citing *People v.*

*Harlan*, 8 P.3d 448, 470-71 (Colo. 2000));[2] (2) the mere presentation of this evidence may have opened the door to the jury hearing evidence that Applicant was a parolee of a prior crime at the time of the offense, *id.* at 9, 11-17; vol. III at 42-45; (3) Applicant was unwilling to waive his medical privilege and allow admission of medical records tending to show that he was incapacitated by drug use at the time of the offense, see *id.* vol. V at 9;[3] and (4) "Jefferson County juries do not like people who get high on drugs and go out and hurt people," *id.* vol. IV at 16-17.[4]

Considering the above, the Court agrees with the CCA that trial counsel's failure to present an intoxication defense was not caused by a failure to investigate, but was a strategic decision due to problems associated with the defense and the corresponding effect it could have on his client. As will be addressed in greater length below, although trial counsel's defense of Applicant was ultimately unsuccessful, this does not undermine

---

[2] Although evidence of a defendant's voluntary intoxication may be relevant "to negate the requisite specific intent of the charged offense," *Harlan*, 8 P.3d at 471, it "does not excuse or justify the criminal conduct, absolving the defendant of criminal liability," and the mere presentation of this evidence does not define how a jury may react to it or what significance a jury may attribute to it in relation to the offense at issue. *See id.* at 470-71.

[3] Without a waiver of Applicant's medical privilege, Respondents note that the only likely way to introduce evidence of Applicant's alleged incapacitated state would have been through his own testimony. *Answer Brief* [#20] at 11 n.4. This was a strategy trial counsel was apparently unwilling to utilize because it would subject his client to potentially harmful cross examination regarding his status as a parolee at the time that he committed the offense at issue. *Record* vol. III at 42-45; vol. V at 9, 11-17.

[4] Although this comment was attributed to Applicant's trial counsel by Applicant at his sentencing hearing, Applicant did so in the context of arguing that the jury was predisposed to be biased against him. *See Record* vol. IV at 16-17. Respondents suggest that the statement also evidences trial counsel's motivation not to pursue an intoxication defense given his understanding of juries' predisposition against such a defense. *See Answer Brief* [#20] at 11. In his Traverse, Applicant does not dispute that this statement suggests one reason trial counsel had for not pursuing an intoxication defense. *See Traverse* [#25] at 5-6. Rather, he argues it is insufficient to establish that trial counsel's decision, based in part by this motivation, was reasonable. *See id.*

the level of deference afforded to counsel's decision.  *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Chandler v. United States*, 218 F.3d, 1305, 1314 (11th Cir. 2000) (noting that unless record shows otherwise, counsel's decision is presumed to be within the range of competency).

### b.      Decision Not to Present Intoxication Defense

The CCA's conclusion that trial counsel's failure to present an intoxication defense did not amount to ineffective assistance is a mixed legal and factual conclusion, which if based on clearly established precedent, is entitled to deference.  *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002).  The CCA applied the standard for determining whether Applicant's trial counsel was ineffective enunciated in *Strickland v. Washington*. Specifically, to establish ineffectiveness of counsel, Applicant must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that the attorney's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different.  *Strickland*, 466 U.S. at 687.  More simply, Applicant must show that his counsel's performance was deficient and that he was prejudiced by it.  *Id.* at 687-92; *Trice*, 196 F.3d at 1159-60.  This is a challenging standard for Applicant because "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  The Court judges "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.*  But "[a]bsent some effect of challenged conduct on the reliability of the trial process, the [constitution] is generally not implicated."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).

As noted above, to succeed on his ineffective assistance claim based on trial counsel's decision not to present an intoxication defense, Applicant must overcome the presumption that the challenged action is considered sound trial strategy. *Strickland*, 466 U.S. at 689. The deference to an attorney's strategic trial decision will stand unless the decision itself was clearly unreasonable. *Bullock*, 297 F.3d at 1046-47. "Where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

Here, Applicant argues that his trial counsel "abandoned this defense for some absurd reasons . . . and [if he would have] presented to the jury the intoxication hospital reports it is proable [sic] that [Applicant's] trial would of [sic] had a differnt [sic] outcome." *Traverse* [#25] at 6-7. As a preliminary matter, given that Applicant refused to waive his medical privilege, it is unclear how his trial counsel could have presented his medical records to the jury. *See Record* vol. V at 9. In any event, other than Applicant's vague and conclusory assertions, Applicant fails to explain (1) what his hospital records would have revealed and (2) why a jury would have treated him differently had they seen them. *See Traverse* [#25] at 6-7. Viewing the medical records independently, while they reveal that Applicant was suffering from acute cocaine and methamphetamine intoxication, the records also indicate that Applicant admitted to "attempt[ing] to assault a police officer." *Medical Record*s [#14-16] at 7. The records also conclude that Applicant, in fact, "assaulted one of the police officers." *Id.* at 8. By contrast, and despite mentioning Applicant's drug-induced state, the records <u>do not</u> indicate that at the time of the offense Applicant lacked

10

the ability to form the legally-required intent.

In relation to Applicant's claim that his trial counsel failed to investigate an intoxication defense, I have already found that the record reveals that trial counsel's decision not to present the defense was a tactical decision rather the result of a failure to investigate. *See supra* Part II.C.1.a. Despite Applicant's conclusory contentions to the contrary, Applicant has not rebutted the presumption that counsel's decision not to pursue an intoxication defense theory was a sound trial strategy. Even crediting that the medical records reveal that Applicant was incapacitated by drugs at the time of the offense, such evidence does not automatically predict how a jury might have responded to it, particularly given that the records also indicate that Applicant assaulted a police officer. Here, the Court should accord highly deferential treatment to counsel's conduct and decline to embrace the distorting effect of hindsight or the conclusory allegations of Applicant regarding how the presentation of certain evidence would have changed the outcome at trial. *Strickland*, 466 U.S. at 689. Indeed, for trial counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999); *Anderson v. AG of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) ("Whether to raise a particular defense is one aspect of trial strategy, and informed 'strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonably, not merely wrong.'" (citation omitted)). From my independent review of the record, I agree with Respondents that "counsel did not reject the defense for lack of evidence that [Applicant] was actually intoxicated. Counsel rejected the strategy because even with such evidence, [Applicant] would not benefit from it." *Answer Brief* [#20] at 15.

Specifically, the record reveals four sound reasons for trial counsel's decision not to pursue an intoxication defense. First, because voluntary intoxication is not an affirmative defense, see *Harlan*, 8 P.3d at 470-71, the jury would not have been bound to exonerate him of all criminal liability. Second, the presentation of the defense may have opened the door to the prosecution to present damaging evidence that Applicant was a parolee at the time of the charged offense. Third, although Applicant contends that his medical records should have been admitted, at the time of the trial, trial counsel indicated that Applicant refused to waive his medical privilege. Fourth, rather than helping Applicant, it is likely that evidence to support an intoxication defense derived from the admission of his medical records would have been negatively received by the jury. Finally, I note that the evidence that Applicant assaulted the officer was overwhelming, nor does Applicant allege that he did not assault the officer. *Cf. Trice*, 196 F.3d at 1163 (holding that even if counsel had sought to admit exculpatory evidence, Applicant could not show the result would have been different because of the ample other evidence against him); *Houchin*, 107 F.3d at 1472 (noting that even if counsel's performance was deficient, where significant other evidence of Applicant's guilt existed, there was no reversible error).

Given all of the above, I find that Applicant has failed to make even a baseline showing that trial counsel's decision was wrong. Consequently, Applicant is unable to meet his higher burden of proof that counsel's conduct was completely unreasonable. Further, there is simply no evidence that Applicant suffered any prejudice from trial counsel's decision and, arguably, the presentation of this evidence may have led to the admission of stronger or more damaging evidence against Applicant. Accordingly, Applicant is not

12

entitled to relief on his ineffective assistance of counsel claim.[5]

To summarize, the CCA's decision is not contrary to, or did not involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding. As such, the Court recommends that Applicant's ineffective assistance of counsel claim be denied because Applicant has failed to prove that he suffered a constitutional injury.

### 2. Failure to Conduct an Evidentiary Hearing in State Court

Essentially, Applicant asks the Court to find that the CCA improperly applied state law when it found that no state court evidentiary hearing was necessary to resolve his ineffective assistance allegations. As a dispositive matter, I find that such a claim does not challenge the validity of Applicant's conviction or sentence because it does not assert that Applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Rather, Applicant merely challenges the state courts' treatment of his postconviction motion. However, there is no federal constitutional right to postconviction review in the state courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration

---

[5] To the extent that Applicant's claim could be more broadly construed as a general challenge regarding trial counsel's failure to present a defense, this failure, "standing alone, does not constitute ineffective assistance of counsel" where the record reveals that trial counsel cross-examined witnesses and challenged the state's case on the theory that the state failed to meet its burden of proof. *See United States v. Hollis*, 191 F. Supp. 2d 1257, 1271-72 (D. Kan. 2002). *See generally Houchin v. Zavaras*, 919 F. Supp. 1480 (D. Colo. 1996). A review of the record here reveals that trial counsel zealously cross-examined the state's witnesses and held the state to its burden of proving that Applicant committed the offenses for which he was charged.

13

. . . states no cognizable federal habeas claim." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that applicant's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"). Because Applicant's contention that the trial court and CCA failed to conduct a hearing in accordance with state law challenges only the state courts' treatment of his postconviction motion, and does not implicate the validity of his conviction or sentence, this claim is not cognizable here and should be rejected.

Nevertheless, I note that Applicant raised the issue of his trial counsel's assistance during his sentencing hearing, prompting the trial judge to address the quality of counsel's performance throughout the trial. Speaking to Applicant, the trial judge noted:

> I think you had good advice from your attorney throughout this case. I can find no point at all where your attorney was not acting in your best interests, to a high degree of expertise and professionalism throughout.
>
> And I commend you, Mr. Hegyi, on the excellent job, what the Court sees as an excellent job, which I'm sure was a very difficult case to defend. And I think you did an exemplary job.
>
> You made the statement that Jefferson County jurors don't like people who get high on drugs and hurt people. That's right; they don't. I don't know any jurors that like people that get high on drugs and then go out and hurt people.

*Record* vol. IV at 22. The trial judge reiterated this finding upon resolution of Applicant's postconviction relief motion, namely that "[t]he record reflects that Defendant was very well represented by counsel" [Docket No. 14-19]. Even were Applicant's claimed injury cognizable here, his assertion that he was deprived of an adequate determination by the state courts on the issue of his counsel's performance is not supported by the record in this

14

case.

### 3.    Necessity of Evidentiary Hearing in Federal Court

Pursuant to 28 U.S.C. § 2254(e)(2), for an Applicant to obtain an evidentiary hearing in a federal habeas court, he must show (1) that he was diligent in developing the factual basis for the claim in state court, *Williams v. Taylor*, 529 U.S. 420, 429-31 (2000), and (2) there exists a factual basis that, if true, would entitle him to relief.  *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2001).  "This means [Applicant] must show that, taking his allegations as true, he would prevail on his claim."  *Boyle v. McCune*, 544 F.3d 1132, 1135 (10th Cir. 2008).  An evidentiary hearing is unnecessary if the claim can be resolved on the existing record.  *Anderson*, 425 F.3d at 859.

As set forth above, I find that regardless of any evidence of Applicant's incapacitation at the time of the offense, trial counsel's decision that Applicant would not benefit from the presentation of this evidence to the jury does not amount to ineffective assistance.  Therefore, Applicant has not shown that he is entitled to relief.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  Accordingly, I find that an evidentiary hearing is not necessary because the ineffective assistance of counsel  claim is without merit and can be resolved on the existing record.

### III.  Conclusion

In reviewing the merits of Applicant's Claim I, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254.  No evidentiary hearing is required.

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Second Amended Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 30, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix